HARVEY SISKIND LLP
IAN K BOYD (SBN 191434)
iboyd@harveysiskind.com
Four Embarcadero Center, 39th Floor
San Francisco, California 94111
Telephone: (415) 354-0100
Facsimile: (415) 391-7124

HITCHCOCK EVERT LLP
JOHN M. CONE (*pro hac vice pending*)
jcone@hitchcockevert.com
750 N. St. Paul Street, Suite 1110
Dallas, Texas 75201
Telephone: (214) 808-7002
Facsimile: (214) 953-1121

Attorneys for Defendant
Texas Best Smokehouse, Inc.

### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BLUE DIAMOND GROWERS, a California corporation,<br><br>        Plaintiff,<br><br>    v.<br><br>TEXAS BEST SMOKEHOUSE, INC., a Texas corporation,<br><br>        Defendant. | Case No. 2:08-cv-01529-GEB-GGH<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PURSUANT TO RULE 12(B)(2) FOR LACK OF PERSONAL JURISDICTION OVER DEFENDANT TEXAS BEST SMOKEHOUSE, INC., OR IN THE ALTERNATIVE TO TRANSFER PURSUANT TO 28 U.S.C. § 1404(A)**<br><br>**Hearing Date: December 1, 2008**<br>**Time:            9:00 a.m.**<br>**Courtroom:    10**<br>**The Honorable Garland E. Burrell, Jr.** |

## INTRODUCTION

Texas Best Smokehouse, Inc. ("TBS") files this Motion Under Rule 12(b)(2) because exercise of jurisdiction over the person of TBS by the Court in this action would violate TBS's right of due process and is therefore not proper under California's long arm statute. TBS is a Texas based company whose sole business activity is licensing the use of TEXAS BEST SMOKEHOUSE to the operators of three combined gas station/convenience stores in Texas and a smokehouse, also located in Texas adjacent to one of the stores. The stores sell barbecued beef and other meats in their restaurant facilities, and beef and other meat jerky from the smokehouse in their retail store facilities, hence the name Texas Best Smokehouse.

In the alternative, TBS requests that this action be transferred to the Federal District Court of the Northern District of Texas for the convenience of witnesses and in the interests of justice. In support of this Motion, TBS files herewith the Declaration of its President, Mr. Ali Sharaf. Sections of that Declaration will be referenced in this Brief as "Sharaf Decln. ¶ __."

## BACKGROUND FACTS

Texas Best Smokehouse, Inc. is a Texas corporation established on December 18, 2006. TBS has its principal place of business at 105 YMCA Drive, Waxahachie, Texas 75165. TBS does not maintain a place of business anywhere other than 105 YMCA Drive in Waxahachie, Texas. Its officers are Ali Sharaf and Mohamed Soneid. Its sole director is Ali Sharaf. All the officers reside and work in Texas. Sharaf Decln. ¶ 3.

TBS has no employees in addition to its officers. Sharaf Decln. ¶ 4.

TBS does not own or lease any property in California. Sharaf Decln. ¶ 5.

TBS does not have any employees or agents in California. Sharaf Decln. ¶ 6.

TBS does not maintain a bank account in California. Sharaf Decln. ¶ 7.

TBS has not sold any goods or services in California, nor is it licensed or otherwise authorized to do business in California. Sharaf Decln. ¶ 8.

TBS has not purchased any goods or services from California. Sharaf Decln. ¶ 9.

TBS has not entered into any contracts with a resident of California. Sharaf Decln. ¶ 10.

1    TBS itself has never sold, offered for sale, or advertised any goods under the name or mark
2    TEXAS BEST SMOKEHOUSE.  Sharaf Decln. ¶ 11.

3    The sole business of TBS is the ownership and licensing of the trade name, trademark and
4    service mark TEXAS BEST SMOKEHOUSE and the TEXAS BEST SMOKEHOUSE and Design
5    Logo ("the TBS Name and Marks").  Sharaf Decln. ¶ 14.

6    TBS has granted four licenses for use of the TBS Name and Marks in connection with
7    combined gas station/convenience store services.  These licenses were granted to Texas entities and
8    permitted the use of the TBS Name and Marks by each entity only at a specific location in Texas
9    where the entity operates a gas station/convenience store.  Sharaf Decln. ¶ 15.

10   In addition, TBS has licensed use of the TBS Name and Marks to Alidrew L.P., a Texas
11   limited partnership doing business in Italy, Texas.  Alidrew L.P. operates a smokehouse in Italy,
12   Texas and sells beef jerky produced in its premises under the TBS Name and Marks.  Sharaf Decln. ¶
13   18.

14   The goods at issue are only available for purchase at the physical locations in Texas.  There is
15   not an interactive web site at which a California resident can order TEXAS BEST SMOKEHOUSE
16   products and have them delivered to California.  Sharaf Decln. ¶ 16.

17   In 2006, TBS's President, Ali Sharaf developed the business concept of a combined gas
18   station/convenience store featuring beef jerky and other packaged convenience store foods together
19   with a restaurant that would serve barbecued meats.  Sharaf Decln. ¶ 12.  TBS was established
20   expressly to own the trade name and house brand to be used by these stores.  Sharaf Decln. ¶ 13.
21   When Mr. Sharaf chose the name and mark TEXAS BEST SMOKEHOUSE, it was not to take
22   advantage of the reputation, if any, in Plaintiff's trademark SMOKEHOUSE for nut products.  The
23   word "smokehouse" was included in the name and marks because each of the gas station/convenience
24   store licensees would offer BBQ meats and sell jerky from the smokehouse in Italy, Texas.  Sharaf
25   Decln. ¶ 19.  Because Mr. Sharaf could not find an acceptable supplier of beef jerky, he licensed the
26   use of the TBS Name and Marks to a smokehouse built adjacent to the first licensed gas
27   station/convenience store in Italy, Texas.  Sharaf Decln. ¶¶ 12, 18.  At this time, there are three
28

1  TEXAS BEST SMOKEHOUSE locations, all in North Texas, in Italy, Tyler, and Burleson.  A fourth
2  is planned in Midlothian, Texas.  Sharaf Decln. ¶ 15.

3   TBS has no ownership interest in the entity that operates the smokehouse, or the entities that
4  operate the gas stations/convenience stores.  Sharaf Decln. ¶¶ 15, 17.

5   The dominant characteristic of the TEXAS BEST SMOKEHOUSE and Design Marks is
6  Texas.  This dominant impression is created not only by the word TEXAS but by the design portions
7  of the mark, including the head of a longhorn steer and two flags with the Lone Star of Texas.  This
8  was done to appeal to the customers of the gas stations/convenience stores who would be Texas
9  residents or visitors to Texas.  The word Texas and the design elements were chosen to emphasize the
10 Texas connection and roots of the business.  Sharaf Decln. ¶ 22.  Even a cursory comparison of the
11 TEXAS BEST SMOKEHOUSE and Design packaging with Plaintiff's packaging show that no
12 attempt was being made to imitate the appearance of the Plaintiff's packaging, or to trade on any
13 reputation and goodwill that it may have.  Sharaf Decln. ¶ 21, Ex A through E.

## ARGUMENT

### The Action Should be Dismissed for Lack of Personal Jurisdiction

16 "When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the
17 burden of demonstrating that the court has jurisdiction over the defendant." *Pebble Beach Co. v.*
18 *Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006).  The California Long-Arm Statute extends personal
19 jurisdiction to the limits of due process under the 14th Amendment. *Pebble Beach*, 453 F.3d at 1154;
20 *Core-Vent Corp. v. Nobel Industries AB*, 11 F.3d 1482, 1484 (9th Cir. 1993).  There are two types of
21 personal jurisdiction: general jurisdiction and specific jurisdiction.

22  If a foreign defendant has business contacts with California that are continuous and
23 systematic, the Court may obtain general jurisdiction over the defendant. *Helicopteros Nacionales de*
24 *Colombia S.A. v. Hall*, 466 U.S. 408, 416 (1984); *Schwarzenegger v. Fred Martin Motor Co.*, 374
25 F.3d 797, 801 (9th Cir. 2004).  "This is an exacting standard, as it should be, because a finding of
26 general jurisdiction permits a defendant to be haled into court in the forum state to answer for any of
27 its activities anywhere in the world." *Schwarzenegger*, 374 F.3d at 801.

28

MEMO IN SUPPORT OF MOTION TO DISMISS OR,                         CASE NO. 2:08-cv-01529-GEB-GGH
IN THE ALTERNATIVE, TO TRANSFER

1    TBS does not meet this "exacting" standard. TBS does no business in California, has no
2 physical presence in California and owns no property in California. Sharaf Decln. ¶¶ 3-11. It is not
3 subject to general jurisdiction in California.

4    Due process also allows for specific jurisdiction over a foreign defendant in a forum state if
5 the defendant has sufficient "minimum contacts" with that state and the cause of action arises from or
6 is related to those contacts. *Pebble Beach*, 453 F.3d at 1154. *See Katzenbach v. Grant*, No.
7 1:04cv6501, 2005 WL 1378976, at *4 (E.D. Cal. June 7, 2005) (granting motion to dismiss for lack
8 of personal jurisdiction). The Ninth Circuit employs a three-prong test to analyze a claim of specific
9 personal jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenegger*, 374 F.3d at 802.

18    Plaintiff bears the burden of establishing the first two prongs of this test. *Id*. If it fails to
19 establish either one, personal jurisdiction is not proper. *Id*. If it does, defendant has the burden under
20 the third prong of establishing that exercise of jurisdiction would not be reasonable. *Id.*

21    In the present case, Plaintiff Blue Diamond Growers ("BDG") cannot establish either of the
22 first two prongs. Prong 1 requires proof of either purposeful availment or purposeful direction.
23 *Schwarzenegger*, 374 F.3d at 802. TBS has not consummated any transactions with California or
24 with residents of California. Sharaf Decln. ¶¶ 8-11. Neither has it availed itself of the privilege of
25 conducting business in California. TBS has not executed or performed any contracts in California.
26 Indeed, TBS has never conducted any business in California and has never purposefully availed itself
27 of the benefits and protections of California. Sharaf Decln. ¶¶ 8-11.

28

- 4 -

MEMO IN SUPPORT OF MOTION TO DISMISS OR,                    CASE NO. 2:08-cv-01529-GEB-GGH
IN THE ALTERNATIVE, TO TRANSFER

1     Nor has TBS purposefully directed its conduct towards California. BDG complains of the
2 sale of food products, particularly nuts, in packaging that it contends infringes its rights in the
3 trademark SMOKEHOUSE. These sales occurred only at retail establishments (gas
4 station/convenience store) in Texas. The sales were made not by TBS but by its licensees. Sharaf
5 Decln. ¶¶ 11, 15, 26.

6     Plaintiff contends that these sales constitute acts by TBS purposefully directed to California
7 because Plaintiff is located in California.

8     The argument that an alleged infringing use in a remote location of a name or mark owned by
9 a California resident is a sufficient basis for finding that a defendant purposefully directed its
10 activities to California because the trademark owner was located in California has been repeatedly
11 rejected by the Ninth Circuit. *See Pebble Beach*, 453 F.3d at 1156-57; *cf. Schwarzenegger*, 374 F.3d
12 at 807. If correct, it would mean that a defendant who sold goods in only one location would
13 nevertheless be subject to jurisdiction in whatever state the owner of a competing mark had its
14 principal place of business. This is not the law. *See Schwarzenegger*, 374 F.3d at 807 (finding that
15 defendant's intentional act—the publication of an advertisement featuring likeness of plaintiff—was
16 directed at Ohio, despite plaintiff's residence in California, because the "purpose of the
17 Advertisement was to entice Ohioans to buy or lease cars from" defendant in Ohio); *See also*
18 *Nonpareil Corp. v. Reddy Raw, Inc.*, No. CV 07-253, 2008 WL 711047, at * 5 (D. Idaho March 14,
19 2008) ("Reddy Raw's intentional act of placing the Nonpareil mark on Reddy Raw products was
20 aimed at the Northeastern and Middle Atlantic areas of the United States, not Idaho. Reddy Raw's
21 purpose in distributing the products with these markings was to maximize sales in these areas, not to
22 cause damage to Nonpareil in Idaho.").

23     In fact, the Ninth Circuit has specifically rejected the notion that "every complaint arising out
24 of alleged trademark infringement … would automatically result in personal jurisdiction wherever the
25 plaintiff's place of business is located." *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 420 (9th Cir.
26 1997) (finding that such a rule "would not comport with traditional notions of what qualifies as
27 purposeful activity invoking the benefits and protections of the forum state").

28

Of course, the contention that BDG suffers harm to its reputation in California as a result of sales to customers in Texas makes no sense. If BDG suffered harm to its reputation, it suffered that harm where the alleged infringing sales took place — that is to say in Texas. It is customers in Texas who could have been confused as a result of the accused products, not customers in California. Accordingly, it is Plaintiff's reputation among consumers in Texas that might be damaged if Plaintiff's contentions were correct (which they are not).

When a plaintiff seeks to establish purposeful direction on the basis of "effects" caused by acts of the defendant outside the forum state on the plaintiff in the forum state, the Supreme Court has formulated a three-part test, all elements of which must be found in order for "effects" jurisdiction to be proper:

> (1) the defendant committed an intentional act
>
> (2) the act was expressly aimed at the forum state
>
> (3) the act caused harm to the plaintiff that the defendant knew was likely to be suffered in the forum state.

*Calder v. Jones*, 465 U.S. 783, 788-90 (1984).

In *Schwarzenegger*, the plaintiff complained of the use of his name and likeness in a newspaper advertisement for the defendant's car dealership which appeared in the Akron Beacon Journal, a local newspaper in Akron, Ohio. Schwarzenegger claimed that he suffered harm in California because that is where he resided. *Schwarzenegger*, 374 F.3d at 798. Applying the three-part *Calder* test, the Ninth Circuit held that defendant committed an intentional act when it published its newspaper advertisement. The court then considered the "expressly aimed at" part of the test. This required it to consider whether the advertisement was "expressly aimed" at California. *Id*. The court held that the publication of the advertisement was ***not*** expressly aimed at Schwarzenegger in California, but at potential customers in Ohio. Therefore the express aim of the advertisement was Ohio, even if the act eventually caused harm to Schwarzenegger in California. The court rejected the argument that because it was "foreseeable" that the publication would cause harm to Schwarzenegger in California, the act was "expressly aimed" at California. The court explained that under *Calder* and

other Supreme Court cases, including *World Wide Volkswagen Corp. v. Woodson*, 44 U.S. 286, 295 (1980),[1] something more than foreseeability is required. Because Schwarzenegger failed the second part of the *Calder* test, the court denied specific jurisdiction. *Id*.

In *Pebble Beach*, the plaintiff golf resort argued that the defendant, who used the name Pebble Beach for an inn/restaurant in Southern England, was subject to specific jurisdiction in California because the defendant's acts were expressly aimed at California where the plaintiff was located. Applying the *Calder* test, the court again held that mere foreseeability that harm could be caused to the plaintiff in the forum state was not sufficient. Rather, "something more" than foreseeability is needed. *Pebble Beach*, 453 F.3d at 1156. Plaintiff argued that defendant's use of the name Pebble Beach coupled with his knowledge of plaintiff's use of the same name were sufficient to satisfy the "express aiming" part of the *Calder* test. The court held it was not. Something more than a foreseeable effect is needed to make the exercise of personal jurisdiction proper. *Id* at 1158.

In the present case, there is nothing other than the claim of infringement to support the contention that the use of the TBS Name and Marks in Texas was expressly aimed at BDG in California.[2]

Even if TBS had actual knowledge of BDG's registration of SMOKEHOUSE as a trademark for nuts (which it did not), that would not establish that the adoption by TBS and the use by its independent licensees of the TBS Name and Marks was purposefully directed at California. The name Texas Best Smokehouse was adopted in December 2006 for the gas station/convenience stores to be operated under license from TBS. When the licensee's use of TEXAS BEST SMOKEHOUSE was extended to use as a house mark on food products sold in the stores, there was no thought on the part of TBS of taking advantage of BDG's goodwill (if any) in SMOKEHOUSE for almonds. Selling goods in Texas under the composite logo mark in stores identified by the TBS Name and

---

[1] In *World Wide Volkswagen Corp. v. Woodson*, the Supreme Court established that foreseeability of harm in the forum state is not sufficient for exercising personal jurisdiction.

[2] As Mr. Sharaf's declaration establishes, the uses of TEXAS BEST SMOKEHOUSE of which BDG complains were not performed by TBS but by its independent licensees. Sharaf Decln. ¶ 11.

1  Marks is not indicative in any way of an intention to harm BDG in California. Sharaf Decln. ¶¶ 19-
2  22.

### In the Alternative, This Action Should be Transferred

Section 1404(a) of Title 28 provides that the court may transfer this action to "any other district or division in which it might have been brought." 28 U.S.C. § 1404(a). "This provision gives a district court broad discretion to transfer a case to another district where venue is also proper. The purpose of [§ 1404(a)] is to prevent the waste 'of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Association de Productores, Empacadores y Exportadores de Agaucate de Michoacan, A.C. v. California Avocado Com'n,* 2008 WL 2169508, at *2 (E.D. Cal. May 21, 2008) (citations omitted).

This action should have been brought in the Northern District of Texas, Dallas Division because that court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1331, 1332, 1338. In addition, the Northern District of Texas Court would have jurisdiction over the person of TBS because it is a Texas corporation and has its principal place of business in Waxahachie, Ellis County, Texas, which is within the Dallas division of the Northern District of Texas. 28 U.S.C. § 124(a)(1).

Transfer may be ordered "for the convenience of parties and witnesses, in the interests of justice." 28 U.S.C. § 1404(a). The "convenience of the witnesses is often the most important factor" in conducting a § 1404(a) analysis. *Tolentino v. Mossman,* 2008 WL 1787752, at *1 (E.D. Cal April 18, 2008) (Burrell, J.). In the present case, it is clear that most, if not all, the third party witnesses whose testimony will be relevant are in Texas. *See Ventress v. Japan Airlines*, 486 F.3d 1111 (9th Cir. 2007 (affirming transfer of case from California to Hawaii based on trial court's findings that most of the potential witnesses lived in Hawaii); *Fisher v. Las Vegas Hilton Corp.*, 47 Fed. Appx. 824, 826-27 (9th Cir. 2002) (affirming transfer of case from California to Nevada based on trial court's finding that the convenience of the witnesses favored transfer). These include the licensees of TBS who use the accused name and mark and the relevant purchasing public which BDG claims is likely to be confused by use of the TBS Name and Marks. This public is located in Texas and

1  encounters use of the TBS Name and Marks only in Texas. These witnesses are beyond the subpoena
2  power of this court.

3      The Court should not give a plaintiff undue deference regarding venue simply based on where
4  the plaintiff has filed suit. The law has always placed limits on that choice. Initially this was under
5  the doctrine of forum non conveniens. *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 507 (1947)
6  (recognizing that the open door provided by the general venue statute may "admit those who seek not
7  simply justice but perhaps justice blended with some harassment" and finding dismissal proper on
8  basis of forum non conveniens). Since *Gulf Oil*, the enactment of Section 1404(a) has broadened the
9  discretion of the district court to overrule the plaintiff's choice of venue and to transfer to one more
10 closely aligned to the convenience of parties and witnesses. *Norwood v. Kirkpatrick*, 67 S. Ct. 839,
11 842 (1955).

12     The plaintiff's choice of venue is, however, factored into the Section 1404(a) analysis by
13 allotting to defendant the burden of showing good cause for a transfer. *In Re Volkswagen of America,*
14 *Inc.*, _ F.3d _, 2008 WL 4531718, at *7 (5th Cir. Oct. 10, 2008). That good cause is the convenience
15 of parties and witnesses referenced in the statute. *Id.*

16     Of course, "a plaintiff's residence is never dispositive on the issue of venue." *B & B*
17 *Hardware, Inc. v. Hargis Industries, Inc*., 2006 WL 4568798, at *4 (C.D. Cal. 2006). Indeed, "many
18 courts have found that the most appropriate forum for an infringement action is in the district where
19 the activities of the alleged infringer-not those of the plaintiff-occurred." *Id.*

20     Certainly, BDG emphasizes the size and geographical reach of its business, *see* Complaint at
21 ¶5, and would suffer little or no inconvenience by trying the case in Texas. Conversely, TBS is a
22 small, local business with no ties or contacts with California. *See California Avocado Com'n,* 2008
23 WL 2169508, at *4 (noting that is it proper to consider the parties' financial strength and ties to the
24 forum).

25 ///

26 ///

27

28

- 9 -

## CONCLUSION

Plaintiff has not met its burden to prove the Court has jurisdiction over the person of TBS in this action. The Court should grant this Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b). In the alternative, the convenience of parties and witnesses, and the interests of justice, favor transfer of this action to the Dallas division of the Federal District Court for the Northern District of Texas.

Dated: November 3, 2008

Respectfully submitted,

HARVEY SISKIND LLP
IAN K. BOYD

HITCHCOCK EVERT LLP
JOHN M. CONE

By:    /s/
    Ian K. Boyd

Attorneys for Defendant
Texas Best Smokehouse, Inc.