1  HANSON BRIDGETT LLP
   SUSAN G. O'NEILL - 115133
2  soneill@hansonbridgett.com
   GARNER K. WENG - 191462
3  gweng@hansonbridgett.com
   425 Market Street, Suite 2600
4  San Francisco, CA  94105
   Telephone:   (415) 777-3200
5  Facsimile:   (415) 541-9366

6  HANSON BRIDGETT LLP
   CHRISTINA M. NUGENT - 199646
7  cnugent@hansonbridgett.com
   980 Ninth Street, Suite 1500
8  Sacramento, CA  95814
   Telephone:   (916) 442-3333
9  Facsimile:   (916) 442-2348

10  Attorneys for Plaintiff
    BLUE DIAMOND GROWERS, a California Corporation
11

12              UNITED STATES DISTRICT COURT

13           FOR THE EASTERN DISTRICT OF CALIFORNIA

14

15  BLUE DIAMOND GROWERS, a               No. CV08-01529 GEB GGH
    California corporation,
16                                        **MEMORANDUM OF POINTS AND
17                Plaintiff,              AUTHORITIES IN SUPPORT OF
                                         PLAINTIFF'S OPPOSITION TO
18         v.                            DEFENDANT'S MOTION TO DISMISS
                                         PURSUANT TO RULE 12(B)(2) FOR
19  TEXAS BEST SMOKEHOUSE, INC., a       LACK OF PERSONAL JURISDICTION
    Texas corporation,                   OVER DEFENDANT TEXAS BEST
20                                        SMOKEHOUSE, INC. OR, IN THE
                Defendant.               ALTERNATIVE, TO TRANSFER
21                                        PURSUANT TO 28 U.S.C. § 1404(A)**

22                                        **Hearing Date:   December 15, 2008
                                          Time:             9:00 a.m.
23                                        Courtroom:        10
                                          Judge:            The Honorable Garland
24                                                           E. Burrell, Jr.**
25                                        **Action Filed: July 2, 2008**
26
27
28

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION .................................................................................. 1

II.  BRIEF OVERVIEW OF PLAINTIFF BLUE DIAMOND GROWERS' RIGHTS AND CLAIMS REGARDING ITS SMOKEHOUSE TRADEMARK ......................... 2

III. DISCUSSION .................................................................................... 4

    A.   Plaintiff Blue Diamond Growers Need Only Make a Prima Facie Showing That Personal Jurisdiction Exists—and the Court Should Treat Uncontroverted Allegations in the Complaint as True and Resolve Conflicts in the Parties' Affidavits in Its Favor ............................... 4

    B.   Defendant Texas Best Smokehouse, Inc.'s Motion to Dismiss Should Be Denied Because There Is Specific Jurisdiction Over Defendant in California ................................................................... 5

        1.   Defendant Texas Best Smokehouse, Inc. purposefully directed activities toward Plaintiff Blue Diamond Growers—and toward California ................................................................... 5

            a.   As a threshold matter, Defendant Texas Best Smokehouse, Inc. knew of Plaintiff Blue Diamond Growers—including its rights in the trademark SMOKEHOUSE and its location in California—at least as early as December 2007 ................................................. 6

            b.   Even after receiving specific actual notice of Plaintiff Blue Diamond Growers' rights in the trademark SMOKEHOUSE, Defendant Texas Best Smokehouse, Inc. continued and expanded its infringing sales under the trademark TEXAS BEST SMOKEHOUSE, continued and expanded its infringing sales under standalone trademarks such as SMOKEHOUSE and the variation SMOKE HOUSE, and made misrepresentations to Blue Diamond Growers in California about what it was doing ........................................ 7

            c.   Defendant Texas Best Smokehouse, Inc.'s comparisons to cases in which express aiming and personal jurisdiction were not found are inapplicable here ................................................................. 10

        2.   This Action Arises Out of the Activities of Defendant Texas Best Smokehouse, Inc. ....................................................... 13

        3.   The Exercise of Jurisdiction Over Defendant Texas Best Smokehouse, Inc. in California is Reasonable ....................... 13

MPA'S ISO PLTF'S OPPOSITION TO DEFT'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION (CV08-01529 GEB GGH)

**TABLE OF CONTENTS**
(continued)

Page

C.    Should the Court Not Find That Plaintiff Blue Diamond Growers Has
      Already Made a Prima Facie Showing of Personal Jurisdiction, It
      Asks the Court to Continue the Hearing on this Motion to Permit
      Further Discovery ................................................................................. 15

D.    Defendant Texas Best Smokehouse, Inc's Motion to Transfer
      Should Be Denied Because It Has Failed to Meet Its Burden of
      Showing a Clear Balance of Inconvenience ............................................ 16

IV.   CONCLUSION ................................................................................. 18

# TABLE OF AUTHORITIES

**Page**

## Cases

*AMF, Inc. v. Sleekcraft,*
    599 F.2d 341 (9th Cir. 1979) ...................................................................................8

*Amini Innovation Corp. v. JS Imports, Inc.,*
    497 F. Supp. 2d 1093 (C.D. Cal. 2007) ...............................................................17

*Asociacion de Productores v California Avocado Comm.,*
    No. 2:08-cv-00439-GEB-DAD, 2008 U.S. Dist. LEXIS 40863 (E.D. Cal. May 20,
    2008) ......................................................................................................................17

*B&B Hardware, Inc. v. Hargis Indus., Inc.,*
    No. CV 06-4871 PA (SSx), 2006 U.S. Dist. LEXIS 96381 (E. D. Cal. Nov. 29,
    2006) ......................................................................................................................17

*Ballard v. Savage,*
    65 F.3d 1495 (9th Cir. 1995) ..............................................................................4, 5

*Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.,*
    223 F. 3d 1082 (9th Cir. 2000) .....................................................................2, 6, 13

*Burger King Corp. v. Rudzewicz,*
    471 U.S. 462 (1985) ..............................................................................................13

*Calder v. Jones,*
    465 U.S. 783 (1984) ................................................................................................5

*Cochran v NYP Holdings, Inc.,*
    58 F. Supp. 2d 1113 (C.D. Cal. 1998) .................................................................17

*Data Disc., Inc. v. Systems Tech. Ass'n, Inc.,*
    557 F.2d 1280 (9th Cir. 1977) ................................................................................5

*Dolfin Corp. v. Jem Sportswear, Inc.,*
    218 U.S.P.Q. 201 (C.D. Cal. 1982) ........................................................................7

*E. & J. Gallo Winery v. F. & P. S.P.A.,*
    899 F.Supp. 465 (E. D. Cal. 1994) .......................................................................16

*Gordy v. Daily News, L.P.,*
    95 F.3d 829 (9th Cir. 1996) ..................................................................................14

*Henri's Food Prods. Co., Inc., v. Kraft, Inc.,*
    717 F.2d 352, 220 U.S.P.Q. 386 (7th Cir. 1983) ...................................................7

*Hope v Otis Elevator Co., et. al.,*
    389 F. Supp. 2d 1235 (E.D. Cal. 2005) ................................................................17

## TABLE OF AUTHORITIES
### (continued)

Page

*Ins. Co. of No. Am. v. Cruz,*
   649 F.2d 1266 (9th Cir. 1981) ..................................................................... 14

*James Burrough Ltd v. Sign of Beefeater, Inc.,*
   540 F.2d 266 (7th Cir. 1976) ........................................................................ 7

*Nonpareil Corp. v. Reddy Raw, Inc.,*
   No. CV 07-253-E-EJL, 2008 U.S. Dist. LEXIS 20187 (D. Id. Mar. 14, 2008) ............. 11

*Panavision Int'l, L.P. v. Toeppen,*
   141 F.3d 1316 (9th Cir. 1998) ........................................................... 9, 12, 14

*Pebble Beach Co. v. Caddy,*
   453 F.3d 1151 (9th Cir. 2006) ..................................................................... 11

*Rio Properties, Inc. v. Rio Int'l Interlink,*
   284 F.3d 1007 (9th Cir. 2002) ...................................................................... 5

*Schwarzenegger v. Fred Martin Motor Co.,*
   374 F.3d 797 (9th Cir. 2004) ...................................................................... 11

*Sebastian Int'l, Inc. v. Vincenzo,*
   No. 00-03476 CM (JWJx), 2001 U.S. Dist. LEXIS 6299, 58 USPQ 2d. (BNA) 1411
   (C.D. Cal. 2001) ....................................................................................... 9

*Smith & Noble v. So. Jersey Vinyl, Inc.,*
   No. CV 97-7473-WDK, 1998 U.S. Dist. LEXIS 15930 (C.D. Cal. 1998) ...................... 14

*Tolentino v. Mossman,*
   2007 U.S. Dist. LEXIS 95717 (E.D. Cal. Dec. 13, 2007) ...................................... 17

*Yahoo! Inc. v. La Ligue Contre le Racisme et L'Antisemitisme,*
   433 F.3d 1199 (9th Cir. 2006) .................................................................. 5, 12

**Statutes**

28 U. S. Code, section 1404(a) ................................................................. 2, 16, 17

Cal. Code Civ. Proc. § 410.10 ......................................................................... 4

**Rules**

Fed. R. Civ. P. 12(d) ................................................................................... 5

Fed. R. Civ. P. 4(k)(1)(A) .............................................................................. 4

## I.    INTRODUCTION

This Court has specific jurisdiction over Defendant Texas Best Smokehouse, Inc. in California because of Defendant's acts expressly aimed at Plaintiff Blue Diamond Growers in California *after* receiving specific actual notice of Blue Diamond Growers' trademark rights and claims—a time period and set of acts or omissions wholly unaddressed in Defendant's motion.

Blue Diamond Growers has an over-50-year history of use—and a nearly-40-year history of exclusive U.S. federal registration—of the SMOKEHOUSE® trademark in connection with almonds, other nuts, and related products. Even a cursory review of the U.S. Patent & Trademark Office searchable online records shows that no other person or company holds a registration on the Principal Register for a mark including the term SMOKEHOUSE in connection with "almonds" or "nuts"—and a visit to the snack aisle of any major supermarket confirms that only Blue Diamond, among any major or visible company or brand, uses SMOKEHOUSE® in connection with almonds or nuts.

Defendant has infringed and diluted Blue Diamond Growers' rights in SMOKEHOUSE® by adopting and using its mark TEXAS BEST SMOKEHOUSE—a mark containing the entirety of Blue Diamond Growers' mark—in connection with almonds and other nuts—the exact same products in which Blue Diamond Growers deals. On or about December 13, 2007, Blue Diamond Growers advised Defendant of its trademark rights and claims—including providing print-outs showing its federal registrations and showing its business address in California. Despite this notice, and after this notice, Defendant has gone on to do the following:

- Defendant expanded its use into a standalone SMOKEHOUSE ALMONDS mark for almonds that is virtually identical to how Blue Diamond Growers uses its SMOKEHOUSE® mark with almonds;

- upon Blue Diamond Growers' follow-up complaint about this new SMOKEHOUSE ALMONDS issue, Defendant verbally misrepresented to Blue Diamond Growers' counsel, in California, that all such labeled product had been removed from the Texas Best Smokehouse retail stores;

- Defendant repeated that misrepresentation in writing, addressed to Blue

1    Diamond Growers' counsel, in California;

2    • all the while, Defendant (through its licensees) was continuing to stock and
3      place new orders for SMOKEHOUSE ALMONDS labeled products for the
       Texas Best Smokehouse retail stores; and

4    • Defendant continues to expand its use of the TEXAS BEST SMOKEHOUSE
5      mark in connection with almonds and nuts, including opening new stores near
       major cities and thoroughfares.

6    Defendant's motion to dismiss concentrates primarily on an alleged inability for

7    Blue Diamond Growers to satisfy the "express aiming" needed for specific jurisdiction.

8    That "requirement is satisfied when the defendant is alleged to have engaged in

9    wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of

10   the forum state"[1]—with Blue Diamond Growers bearing the burden only of making out a

11   prima facie case based on facts that, if true, support jurisdiction. Defendant's acts,

12   undertaken with full knowledge of Blue Diamond Growers' rights and claims and Blue

13   Diamond Growers' residency in California, satisfy this burden. At a minimum,

14   Defendant's delivery of misrepresentations *into California* regarding its supposed

15   actions to remediate its use of SMOKEHOUSE ALMONDS, while it was in fact

16   continuing and expanding use of that mark, are sufficient to sustain jurisdiction. For

17   these reasons, Blue Diamond Growers asks this Court to deny Defendant's motion to

18   dismiss.

19   Defendant's motion in the alternative, to transfer venue under Section 1404(a) for

20   convenience, is based only on vague and insufficiently specific references to unnamed

21   witnesses or unclear inconveniences—and really seeks just to shift inconvenience onto

22   Blue Diamond Growers. This does not meet Defendant's burden on such a motion; and

23   Blue Diamond Growers asks this Court also to deny Defendant's motion to transfer.

24   **II.    BRIEF OVERVIEW OF PLAINTIFF BLUE DIAMOND GROWERS' RIGHTS AND
           CLAIMS REGARDING ITS SMOKEHOUSE TRADEMARK**
25

26   Founded in 1910, Blue Diamond Growers is the world's largest tree nut

27   processing and marketing company and is headquartered in Sacramento, California.[2] As

28
     ---
     [1] *Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.,* 223 F. 3d 1082, 1087 (9th Cir. 2000).
     [2] O'Shaughnessy Decl. ¶ 3.

1  a grower-owned cooperative, Blue Diamond Growers receives almonds from

2  approximately 3000 California almond growers each year—valued annually at roughly

3  $750 million.[3] Blue Diamond Growers markets the crop to all 50 states in the United

4  States and more than 90 foreign countries,[4] making almonds California's largest food

5  export.[5]

6      One of Blue Diamond Growers' most well-known sub-brands is SMOKEHOUSE®.

7  Blue Diamond Growers' SMOKEHOUSE® products have achieved considerable

8  success and have gained widespread recognition. In 2007, the consumer retail sales of

9  Blue Diamond Growers' SMOKEHOUSE® almonds were on the order of $44 million in

10 the United States.[6] Blue Diamond Growers owns two U.S. federal registrations for

11 SMOKEHOUSE—Registration No. 897,029, on the Principal Register, filed on August 4,

12 1969, registered on August 18, 1970, listed first-use date of 1958, for "shelled almonds"

13 and Registration No. 1296610, on the Principal Register, filed on September 6, 1983,

14 registered on September 18, 1984, listed first-use date of 1958, for "roasted, salted and

15 flavored edible nuts"—and a California state trademark registration for SMOKEHOUSE,

16 Registration No. 47440, filed and registered on December 29, 1969.[7] SMOKEHOUSE®

17 is a highly recognizable and differentiated brand, with the product being higher-quality

18 than many other almonds and nuts and importantly being peanut free.[8]

19     Since approximately 1965, Blue Diamond Growers has sold and distributed many

20 of its SMOKEHOUSE® nut and almond products to Texas; and it continues to sell and

21 distribute many of its SMOKEHOUSE® nut and almond products to Texas today.

22 Looking at the period from 1999 to date, Blue Diamond Growers has distributed nearly

23 9,000,000 individual units of SMOKEHOUSE® products to Texas.[9] Throughout all or

24 most of this time, the packaging for the various SMOKEHOUSE® nut and almond

---

[3] *Id.* ¶ 3.
[4] *Id.* ¶ 3.
[5] *Id.* ¶ 3.
[6] *Id.* ¶ 5.
[7] *Id.* ¶ 6; Request for Judicial Notice ¶¶ A-B & Ex. A-B.
[8] *Id.* ¶ 8.
[9] *Id.* ¶ 9.

MPA'S ISO PLTF'S OPPOSITION TO DEFT'S MOTION TO DISMISS FOR
LACK OF PERSONAL JURISDICTION (CV08-01529 GEB GGH)

1664155.2

products that Blue Diamond Growers has sold and distributed to Texas has all identified Blue Diamond Growers right on the label, as well as stating that Blue Diamond Growers is in Sacramento, California.[10] Currently, Blue Diamond Growers' SMOKEHOUSE® products are available throughout Texas—including in close proximity to Defendant's corporate headquarters and its licensee retail locations.[11]

Blue Diamond Growers alleges harm, among other things, because:

- Defendant, through its controlled licensees,[12] began use of TEXAS BEST SMOKEHOUSE—a mark which incorporates the entirety of Blue Diamond Growers' SMOKEHOUSE® mark—in connection with almonds and other nuts. This is likely to cause confusion in the marketplace, as well as dilute the distinctive quality of Blue Diamond Growers' SMOKEHOUSE® mark.

- In its application to register the TEXAS BEST SMOKEHOUSE word mark, Defendant claimed exclusive rights to this mark through the U.S.—and although it disclaimed rights to "SMOKEHOUSE" apart from the mark as a whole in other applications it filed, it did not disclaim rights to "SMOKEHOUSE" in its application to register for nuts.

- Defendant further, through its controlled licensees, began use of SMOKEHOUSE ALMONDS—a mark which is identical to how Blue Diamond Growers' uses and displays its SMOKEHOUSE® mark on almonds—in connection with almonds. This is likely to cause confusion in the marketplace, as well as dilute the distinctive quality of Blue Diamond Growers' SMOKEHOUSE® mark. Importantly, Defendant's SMOKEHOUSE ALMONDS are not peanut-free and processed at peanut-free facilities, as Blue Diamond Growers' SMOKEHOUSE® almonds are—exacerbating the potential effect of confusion and dilution.

## III.   DISCUSSION

### A.   Plaintiff Blue Diamond Growers Need Only Make a Prima Facie Showing That Personal Jurisdiction Exists—and the Court Should Treat Uncontroverted Allegations in the Complaint as True and Resolve Conflicts in the Parties' Affidavits in Its Favor.

Plaintiff Blue Diamond Growers has the burden of showing personal jurisdiction over Defendant Texas Best Smokehouse,[13] under California's long-arm statute and comporting with U.S. constitutional due process.[14] The Court may decide this motion

---

[10] *Id.* ¶ 9.

[11] O'Shaughnessy Decl. ¶¶ 11-12 & Ex. 1.

[12] Defendant appears to claim trademark use through its licensees. *See* Sharaf Decl. ¶ 15; Request for Judicial Notice ¶ C & Ex. C. Defendant has represented the ability to control its licensees, including the ability to terminate licensees. *See* Weng Decl. ¶ 8 & Ex. 13.

[13] *Ballard v. Savage,* 65 F.3d 1495, 1498 (9th Cir. 1995).

[14] *See* FED. R. CIV. P. 4(k)(1)(A); CAL. CODE CIV. PROC. § 410.10 (California long-arm

- 4 -

1  without an evidentiary hearing. "Where . . . the District Court receives only written

2  submissions, the plaintiff need only make a prima facie showing of jurisdiction to avoid

3  the defendant's motion to dismiss."[15] Moreover, in that situation, evidence should be

4  weighed in favor of Blue Diamond Growers:

5      uncontroverted allegations in . . . [the] complaint must be taken as true, and
       conflicts between the facts contained in the parties' affidavits must be resolved in
6      [the plaintiff's] favor.[16]

7  "That is, the plaintiff need only demonstrate facts that *if true* would support jurisdiction

8  over the defendant."[17]

9      The Court may of course choose to set an evidentiary hearing[18]; and the Court

10  may also defer a decision on the issue of personal jurisdiction until trial.[19]

11  **B.    Defendant Texas Best Smokehouse, Inc.'s Motion to Dismiss Should Be
        Denied Because There Is Specific Jurisdiction Over Defendant in California.**

12
13      The Ninth Circuit analyzes specific jurisdiction with a three-prong test:

14      (1) the non-resident defendant must purposefully direct his activities or
        consummate some transaction with the forum or resident thereof; or perform
15      some act by which he purposefully avails himself of the privilege of conducting
        activities in the forum, thereby invoking the benefits and protections of its laws;

16      (2) the claim must be one which arises out of or relates to the defendant's forum
        related activities; and

17
18      (3) the exercise of jurisdiction must comport with fair play and substantial justice,
        i.e., it must be reasonable.[20]

19      **1.    Defendant Texas Best Smokehouse, Inc. purposefully directed
            activities toward Plaintiff Blue Diamond Growers—and toward
20          California.**

21      For this first prong—often called the "purposeful availment" or "purposeful

22  direction" prong—courts apply the "effects" test set forth in the U. S. Supreme Court's

23

24  statute confers jurisdiction to the extent it comports with the U.S. Constitution).
   [15] *Rio Properties, Inc. v. Rio Int'l Interlink,* 284 F.3d 1007, 1019 (9th Cir. 2002) (citing
25  cases).
   [16] *Id.*
26  [17] *Ballard v. Savage,* 65 F.3d 1495, 1498 (9th Cir. 1995) (emphasis supplied).
   [18] *See* FED. R. CIV. P. 12(d).
27  [19] *Data Disc., Inc. v. Systems Tech. Ass'n, Inc.,* 557 F.2d 1280, 1285 (9th Cir. 1977).
   [20] *Yahoo! Inc. v. La Ligue Contre le Racisme et L'Antisemitisme,* 433 F.3d 1199, 1205-
28  06 (9th Cir. 2006) (en banc).

- 5 -

opinion in *Calder v. Jones.*[21] Under the effects test, the defendant must have committed an intentional act expressly aimed at the forum state that causes harm in the forum state that the defendant knows is likely to be suffered in the forum state.[22] An act for which harm is foreseeable is not enough—and the cases often turn more on fulfilling the requirement of "express aiming."[23] This "requirement is satisfied when the defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state."[24] In reviewing the case law to deduce this test for express aiming, the Ninth Circuit commented specifically that, "The presence of individualized targeting is what separates these cases [in which we have found express aiming] from others in which we have found the effects test unsatisfied."[25]

> **a.   As a threshold matter, Defendant Texas Best Smokehouse, Inc. knew of Plaintiff Blue Diamond Growers—including its rights in the trademark SMOKEHOUSE and its location in California—at least as early as December 2007.**

To have expressly aimed its acts or omissions at Plaintiff Blue Diamond Growers, Defendant Texas Best Smokehouse of course first had to know of Blue Diamond Growers. The evidence all confirms this:

- Defendant admits that it had constructive notice of Blue Diamond Growers' SMOKEHOUSE® registrations from the beginning of its existence.[26] Additionally, Blue Diamond Growers SMOKEHOUSE® products are sold in substantial quantity throughout Texas[27] and are available in numerous retail locations that are in close proximity to Defendant's corporate headquarters and its four retail locations[28]; this is further evidence that Defendant knew of Blue Diamond Growers SMOKEHOUSE® products before adopting its own marks using the term SMOKEHOUSE in or about February 2007.

- Defendant admits receiving a letter from counsel for Blue Diamond Growers dated December 13, 2007 on or around that date—and produced a copy of

---

[21] *See id.* at 1206 (citing to and discussing "effects" test of *Calder v. Jones,* 465 U.S. 783 (1984)).
[22] *Id.*
[23] *See, e.g., Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.,* 223 F. 3d 1082, 1087 (9th Cir. 2000) (discussing that there must be "something more" than foreseeeabillity—and that the "something more" is "express aiming" at the forum state).
[24] *Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.,* 223 F. 3d 1082, 1087 (9th Cir. 2000).
[25] *Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.,* 223 F. 3d 1082, 1088 (9th Cir. 2000).
[26] Weng Decl. Ex. 10 (Response to Request Nos. 7-8).
[27] O'Shaughnessy Decl. ¶¶ 9-12 & Ex. 1.
[28] O'Shaughnessy Decl. ¶¶ 9-12 & Ex. 1.

- 6 -

the letter with its enclosures, in discovery.[29] That letter details Blue Diamond Grower's U.S. federal registrations of SMOKEHOUSE® and claim of rights. It also shows counsel for Blue Diamond Growers being located in California; and its enclosures show Blue Diamond Growers being located in California—though Defendant oddly denies knowing that Blue Diamond Growers was in California as of the time of the letter.[30] Defendant also denies knowing that Blue Diamond Growers was in California as of February 2008 and July 2008[31]—although by those times, it had been in possession of documents from Blue Diamond Growers showing its location in California for three and seven months, respectively.

If the Court proceeds on the papers (rather than an evidentiary hearing), conflicts in the evidence must be resolved in Blue Diamond Growers' favor[32]—and for purposes of this motion, Defendant knew of Blue Diamond Growers, its claimed rights in SMOKEHOUSE®, and Blue Diamond Growers' headquarters being in California, at least as early as December 2007.

> **b.    Even after receiving specific actual notice of Plaintiff Blue Diamond Growers' rights in the trademark SMOKEHOUSE, Defendant Texas Best Smokehouse, Inc. continued and expanded its infringing sales under the trademark TEXAS BEST SMOKEHOUSE, continued and expanded its infringing sales under standalone trademarks such as SMOKEHOUSE and the variation SMOKE HOUSE, and made misrepresentations to Blue Diamond Growers in California about what it was doing.**

Defendant Texas Best Smokehouse goes on at length about allegedly not knowing of Plaintiff Blue Diamond Growers before it adopted its TEXAS BEST SMOKEHOUSE mark[33]—and even tries to argue the underlying merits of the case.[34] But

---

[29] Weng Decl. Ex. 8.
[30] Weng Decl. Ex. 15 (Response to Request No. 20).
[31] Weng Decl. Ex. 15 (Response to Request Nos. 33, 39).
[32] *See* discussion *supra* § III.A. (and accompanying citations).
[33] *See* Defendant's Motion at 2:21-:25; Sharaf Decl. ¶¶ 23-25, 27.
[34] *See* Defendant's Motion at 3:5-:13. To the extent that Defendant tries to argue the merits, it does so unfairly and incorrectly. For instance, Defendant emphasizes the design aspects of its full logo while ignoring the fact that it uses the mark TEXAS BEST SMOKEHOUSE without the design (*see* Brown Decl. Ex. 7) and always evidenced its intent to use the mark TEXAS BEST SMOKEHOUSE without the design by applying to register the words themselves, without any design components (*see* Request for Judicial Notice ¶ C and Ex. C). Moreover, Defendant tries to compare the marks "side by side"—but the courts have repeatedly emphasized that a "side-by-side" comparison is not the test and that marks should instead be considered as a customer with imperfect recollection would remember them. *See, e.g., James Burrough Ltd v. Sign of Beefeater, Inc.*, 540 F.2d 266, 275 (7th Cir. 1976); *Dolfin Corp. v. Jem Sportswear, Inc.*, 218 U.S.P.Q. 201, 207 (C.D. Cal. 1982); *see also, e.g., Henri's Food Prods. Co., Inc., v. Kraft, Inc.*, 717 F.2d 352, 355, 220 U.S.P.Q. 386, 388 (7th Cir. 1983) (gauging confusion considers consumers presented with the marks singly rather than side by side.). The

-7-

it pointedly avoids discussion of what it did **after** it had specific actual notice of Blue Diamond Growers (and its claimed rights and location in California). After receiving this notice in December 2007, Defendant has done the following:

- Before or by May 2008, through its licensees, Defendant began (or perhaps continued) sales of almonds under the trademark SMOKEHOUSE ALMONDS—a mark even closer to Blue Diamond Growers' SMOKEHOUSE® trademark.

- In July 2008, Defendant (through its counsel) advised Blue Diamond Growers (through its counsel)—whom it knew to be in California—that it had stopped its licensees from selling almonds under the trademark SMOKEHOUSE ALMONDS. This was a misrepresentation directed at Blue Diamond Growers in California—apparently designed to lull Blue Diamond Growers into inattention or inaction.

- In September 2008, Defendant (through its counsel) advised Blue Diamond Growers (through its counsel), in a letter expressly addressed to counsel in California, that "all 'Smokehouse Almonds' have been removed from the **TEXAS BEST SMOKEHOUSE stores.**"[35] This was a misrepresentation sent to and directed at Blue Diamond Growers in California.

- As of November 2008, through one or more of its licensees, Defendant continued sales of almonds under the trademark SMOKEHOUSE ALMONDS.[36]

- As of November 2008, through one or more of its licensees, Defendant began (or perhaps continued) sales of almonds under the trademark SMOKE HOUSE ALMONDS (a close variation of its other trademark SMOKEHOUSE ALMONDS, though with this packaging placing even greater emphasis on the name SMOKE HOUSE ALMONDS).[37] *This product appears to have been newly ordered for the Christmas holiday season*—with the packaging featuring candy canes with green holly leaves all over it and a green ribbon tying up the top.[38]

- Through its licensees, Defendant continued or expanded sales of almonds and other nuts under its trademark TEXAS BEST SMOKEHOUSE, including by expanding into a new Texas Best Smokehouse location in Midlothian, Texas.

---

Ninth Circuit has identified eight factors relevant to whether consumers are likely to be confused in a trademark dispute: similarity of the marks; similarity of the goods or services; similarity of the marketing channels; evidence of actual confusion; strength of the senior mark; degree of care likely to be exercised by the purchaser; likelihood of expansion and overlap of the goods /services; and evidence of bad-faith intent by the junior user. *See AMF, Inc. v. Sleekcraft*, 599 F.2d 341, 348-49 (9th Cir. 1979). But Defendant tries improperly to reduce this analysis to a few sentences of visual side-by-side comparison. *See* Defendant's Motion at 3:5-:13

[35] *See* Weng Decl. ¶ 9 & Ex. 13 (letter from counsel for Defendant) (emphasis supplied).
[36] *See* Brown Decl. ¶ 2 & Ex. 4-5.
[37] *See* Brown Decl. ¶ 3 & Ex. 6-7.
[38] *See* Brown Decl. Ex. 7.

- 8 -

1   In each of these ways, Defendant has expressly aimed its activity at Blue Diamond

2   Growers—all the while knowing of Blue Diamond Grower's rights in SMOKEHOUSE®,

3   knowing that Blue Diamond Growers claimed that these types of activities infringed and

4   diluted its trademark rights, and knowing Blue Diamond Growers is in California. Again,

5   Blue Diamond Growers need only make a prima facie showing of these facts that, if true,

6   establish jurisdiction.[39] And as the Ninth Circuit has affirmed, satisfying the purposeful-

7   direction analysis does not require that "a defendant be physically present or have

8   physical contacts with the forum, so long as his efforts are 'purposefully directed' toward

9   forum residents."[40] Blue Diamond Growers has satisfied the purposeful-direction tests.

10       In a case with reasoning that may be instructive, *Sebastian Int'l, Inc. v. Vincenzo*

11   *Russolillo,*[41] a federal court for the Central District of California reconsidered its earlier

12   decision finding personal jurisdiction over an alleged trademark infringer under

13   "purposeful direction" analysis. The court's earlier decision found that the defendant had

14   expressly aimed its allegedly infringing actions at the plaintiff in its home state when it

15   received a cease-and-desist letter, disregarded the notice, and failed to ensure that it

16   ceased selling the allegedly infringing product.[42] The court tacitly maintained the

17   appropriateness of this analysis[43]—but it changed its decision because of new evidence

18   submitted by the defendant that it had not disregarded the cease-and-desist notice.[44]

19   Rather, the defendant had responded to the plaintiff with questions as to how best to

20   ensure it was not selling the allegedly infringing product—to which the plaintiff then failed

21   to respond for over a year.[45]

22       The facts about Defendant here are much more parallel to the original findings

23   that the district court in *Sebastian Int'l* made, before the new evidence was submitted.

24

---

[39] *See* discussion *supra* § III.A. (and accompanying citations).
[40] *See Panavision Int'l, L.P. v. Toeppen,* 141 F.3d 1316, 1320 (9th Cir. 1998).
[41] No. 00-03476 CM (JWJx), 2001 U.S. Dist. LEXIS 6299, 58 USPQ 2d. (BNA) 1411 (C.D. Cal. 2001).
[42] *Id.* 2001 U.S. Dist. LEXIS 6299 at *9.
[43] *Id.*
[44] *Id.*
[45] *Id.* 2001 U.S. Dist. LEXIS 6299 at *9-*10.

- 9 -

1   There has never been an inquiry from Defendant about how to comply with Blue

2   Diamond Growers' request, let alone one to which Blue Diamond Growers did not

3   respond. Instead, Defendant asserted that it had complied with the request as it applied

4   to the SMOKEHOUSE ALMONDS products at issue (though not the TEXAS BEST

5   SMOKEHOUSE products)—but this turned out to be a misrepresentation. Over 11

6   months after Defendant first learned of Blue Diamond Grower's claims and its rights in

7   SMOKEHOUSE®, over 4 months after Blue Diamond Growers specifically advised of its

8   claims relating separately to the SMOKEHOUSE ALMONDS products, and over 4

9   months after Defendant advised Blue Diamond Growers that all such products had been

10   "removed from the TEXAS BEST SMOKEHOUSE stores,"[46] two different types of

11   SMOKEHOUSE ALMONDS products were found at two different TEXAS BEST

12   SMOKEHOUSE stores—one seemingly newly ordered with special Christmas-theme

13   packaging.[47] In sum, Defendant expressly aimed its acts at Blue Diamond Growers in

14   California; and its motion to dismiss should be denied.

15         **c.**    **Defendant Texas Best Smokehouse, Inc.'s comparisons to**
              **cases in which express aiming and personal jurisdiction were**

16                 **not found are inapplicable here.**

17        In its motion, Defendant Texas Best Smokehouse tries to characterize Plaintiff

18   Blue Diamond Growers' jurisdictional argument as allowing that all trademark

19   infringement cases can be brought in the home state of the trademark owner[48]—but this

20   is neither the set of facts at issue here nor Blue Diamond Growers' position. Here,

21   Defendant received specific and actual notice of the trademark owner's rights, claims,

22   and home state; Defendant continued its allegedly infringing activity and even expanded

23   it, including into variations of marks that are even closer to Blue Diamond Growers'; and

24

---

25   [46] *See* Weng Decl. ¶ 9 & Ex. 13 (letter from counsel for Defendant) (emphasis supplied).
    [47] Brown Decl. ¶¶ 2-3 & Ex. 4-7.

26   [48] *See* Defendant's Motion at 5:6-:11 ("Plaintiff contends that these sales constitute acts
by TBS purposefully directed to California because Plaintiff is located in California. [¶]

27   The argument that an alleged infringing use in a remote location of a name or mark
owned by a California resident is a sufficient basis for finding that a defendant

28   purposefully directed its activities to California because the trademark owner was located
in California has been repeatedly rejected by the Ninth Circuit.")

MPA'S ISO PLTF'S OPPOSITION TO DEFT'S MOTION TO DISMISS FOR
LACK OF PERSONAL JURISDICTION (CV08-01529 GEB GGH)

1664155.2

1  Defendant verbally and in writing directed misrepresentations into California about what

2  it was doing with such marks.

3  In one of the first cases Defendant cites, *Pebble Beach Co. v. Caddy,*[49] "The only

4  acts identified by [Plaintiff] Pebble Beach as being directed at California are the website

5  and the use of the name 'Pebble Beach' in the domain name."[50] Based on the analysis in

6  the opinion, there is no indication that the defendant's goods or services were directly

7  competing with the plaintiff; there is no indication that the defendant learned of the

8  plaintiff's claims and then tried to expand its allegedly infringing trademark use; and

9  there is no indication that the defendant made misrepresentations to the plaintiff that it

10  would cease allegedly infringing use.

11  In another case Defendant cites here, *Schwarzenegger v. Fred Martin Motor*

12  *Co.,*[51] the only act identified as being expressly aimed at California was the defendant's

13  "creation and publication of the Advertisement."[52] The Advertisement consisted of "small

14  photographs and descriptions of various cars" along with a small photograph of

15  Schwarzenegger as his movie alter-ego, the Terminator, with a cartoon speech bubble

16  making it seem as though Schwarzenegger were telling potential customers to

17  "Terminate EARLY . . .", meaning they should get out of their car leases and go to the

18  defendant to obtain a new car.[53] The Advertisement was run five times in a local Ohio

19  paper that was never circulated outside of Ohio.[54] Based on the analysis in the opinion,

20  there is no indication that the defendant's goods or services were directly competing with

21  the plaintiff; there is no indication that the defendant received a cease-and-desist letter

22  and proceeded with or even expanded its allegedly offending use of the image; and

23  there is no indication that the defendant made misrepresentations to the plaintiff that it

24  would cease use of the image.

25  _____

26  [49] 453 F.3d 1151 (9th Cir. 2006).
   [50] *Id.* at 1156.

27  [51] 374 F.3d 797 (9th Cir. 2004).
   [52] *Id.* at 807.

28  [53] *Id.* at 799.
   [54] *Id.* at 799-800.

1   Defendant also cites a (so far) unpublished decision out of the District of Idaho,

2   *Nonpareil Corp. v. Reddy Raw, Inc.*[55] This case is outside the Ninth Circuit and is not

3   mandatory authority—and also contains only brief discussion of the court's conclusions

4   on whether the defendant expressly aimed its allegedly infringing activity at the

5   trademark owner's home state. For instance, the decision states, "[Defendant] Reddy

6   Raw's purpose in distributing the products with these markings was to maximize sales in

7   these areas, not to cause damage to Nonpareil in Idaho."[56] It does not go further,

8   however, in explaining the conclusion as to the defendant's purpose. Based on what is

9   described in the opinion, there is no indication that the defendant was alleged to know

10  specifically of the plaintiff, its claimed rights, and its home state; there is no indication

11  that the defendant received a cease-and-desist letter and proceeded with or even

12  expanded its allegedly infringing trademark use; and there is no indication that the

13  defendant made misrepresentations to the plaintiff that it would cease allegedly

14  infringing use.

15  Finally, Defendant tries to argue that the situs of any harm in this case would be

16  Texas,[57] apparently suggesting that there is no relevant effect in California—but this

17  ignores established Ninth Circuit law. In one of its earlier cases involving a trademark

18  dispute over domain names, the Ninth Circuit held:

19      The brunt of the harm to [Plaintiff] Panavision was felt in California. [Defendant]
20      Toeppen knew Panavision would likely suffer harm there because . . .
        [Panavision's] principal place of business was in California.[58]

21  Additionally, the Ninth Circuit has further clarified that:

22      [T]he "brunt" of the harm need not be suffered in the forum state. If a
23      jurisdictionally sufficient amount of harm is suffered in the forum state, it does not
        matter that even more harm might have been suffered in another state.[59]

24  Whether there is harm felt in Texas is therefore irrelevant to the jurisdictional analysis at

25  [55] No. CV 07-253-E-EJL, 2008 U.S. Dist. LEXIS 20187 (D. Id. Mar. 14, 2008).
    [56] *Id.* at *14.
26  [57] *See* Defendant's Motion at 6:2-:3 ("If BDG suffered harm to its reputation, it suffered
    that harm where the alleged infringing sales took place—that is to say Texas.")
27  [58] *See Panavision Int'l, L.P. v. Toeppen,* 141 F.3d 1316, 1321 (9th Cir. 1998).
    [59] *See Yahoo! Inc. v. La Ligue Contre Le Racisme et L'Antisemitisme,* 433 F.3d 1199,
28  1207 (9th Cir. 2006).

- 12 -

1  issue—rather, the Court should look at whether there is jurisdictionally sufficient harm

2  suffered in California.

3       In sum, Defendant's case references do not control the outcome here; and Blue

4  Diamond Growers respectfully asks the Court to deny Defendant's motion.

5       **2.    This Action Arises Out of the Activities of Defendant Texas Best
             Smokehouse, Inc.**

6       This second prong of the specific-jurisdiction determination is a "but for" causation

7  test.[60] But for the actions by Defendant Texas Best Smokehouse, Plaintiff Blue Diamond

8  Growers would not be suffering the effects of infringement and dilution of its

9  SMOKEHOUSE® mark and would not be forced to enforce and defend its rights in the

10 SMOKEHOUSE® mark against Defendant to maintain the high strength it has enjoyed in

11 the mark to date. Blue Diamond Growers has satisfied this prong of specific-jurisdiction.

12      **3.    The Exercise of Jurisdiction Over Defendant Texas Best
             Smokehouse, Inc. in California is Reasonable.**

13      The final prong of specific jurisdiction is reasonableness—but the burden falls on

14 Defendant Texas Best Smokehouse to put on a "compelling case":

15
16      **Burger King *explicitly places upon the defendant the burden of
        demonstrating on reasonableness and requires the defendant to put on a
        "compelling case."* [Citation omitted] the reasonableness determination requires
        the consideration of several specific factors: (1) the extent of the defendant's
        purposeful interjection into the forum state, (2) the burden on the defendant in
        defending in the forum, (3) the extent of the conflict with the sovereignty of the
        defendant's state, (4) the forum state's interest in adjudicating the dispute, (5) the
        most efficient judicial resolution of the controversy, (6) the importance of the
        forum to the plaintiff's interest in convenient and effective relief, and (7) the
        existence of an alternative forum. [Citation omitted.]"[61]**

17 In fact, Defendant's motion does not address the reasonableness prong of the specific-

18 jurisdiction analysis; and this should therefore be conceded to Blue Diamond Growers.

19 Nevertheless, analysis of reasonableness leads to the same result.

20      As to the first factor—the extent of Defendant's purposeful interjection into

21 California—this is described above in the discussion of jurisdiction. Based on its

---

[60] *Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*, 223 F. 3d 1082, 1088 (9th Cir. 2000).
[61] *Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*, 223 F. 3d 1082, 1088 (9th Cir. 2000) (describing the law set forth in *Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985)) (emphasis supplied).

- 13 -

1   expressly aimed acts, including verbal and written misrepresentations sent into

2   California, this factor favors Blue Diamond Growers and California.

3          As to the second factor——the burden on Defendant—there is a high threshold for

4   a burden sufficient to make a "compelling case" against the reasonableness of

5   jurisdiction. As the Ninth Circuit put it, the "inconvenience [must be] so great as to

6   constitute a deprivation of due process"[62]; and "in this era of fax machines and discount

7   air travel, requiring [a defendant] to litigate in California is not constitutionally

8   unreasonable."[63] This factor also favors Blue Diamond Growers and California.

9          As to the third factor—the conflict with the sovereignty of Texas—this appears to

10  be neutral as between the parties.

11         As to the fourth factor——California's interest in adjudicating the dispute—the

12  Ninth Circuit has several times stated: "California maintains a strong interest in providing

13  an effective means of redress for its residents tortiously injured."[64] And as a U.S. District

14  Court for the Central District of California put it:

15         California maintains an interest in providing an effective avenue of redress for its
       citizens. Additionally, in the nature of plaintiff's unfair competition and false
16     advertising claims, namely to protect the citizens of California from using in
       misleading commercial practices, the state's interest is heightened.[65]
17

18  And in addition to Blue Diamond Growers being a citizen of California in whom California

19  maintains an interest, Blue Diamond Grower's interests also affect approximately 3000

20  almond growers who deliver almonds to it. This factor favors Blue Diamond Growers and

21  California.

22         As to the fifth factor—the most efficient judicial resolution—this factor is not yet

23  ────────────────────

24  [62] *Panavision Int'l, L.P. v. Toeppen,* 141 F.3d 1316, 1323 (9th Cir. 1998); *see also Smith & Noble v. So. Jersey Vinyl, Inc.,* No. CV 97-7473-WDK, 1998 U.S. Dist. LEXIS 15930,

25  at *14 (C.D. Cal. 1998) ("modern means of communication and transportation have tended to diminish the burden of defense of a lawsuit in a distant forum." (quoting *Ins. Co. of No. Am. v. Cruz,* 649 F.2d 1266, 1271 (9th Cir. 1981)).

26  [63] *Panavision Int'l, L.P. v. Toeppen,* 141 F.3d 1316, 1323 (9th Cir. 1998).
    [64] *Panavision Int'l, L.P. v. Toeppen,* 141 F.3d 1316, 1323 (9th Cir. 1998) (citing *Gordy v.

27  Daily News, L.P.,* 95 F.3d 829, 836 (9th Cir. 1996)).
    [65] *Smith & Noble v. So. Jersey Vinyl, Inc.,* No. CV 97-7473-WDK, 1998 U.S. Dist. LEXIS

28  15930, at *15 (C.D. Cal. 1998)

- 14 -

1    clear, as Defendant has yet to provide Initial Disclosures or answer the Complaint,

2    meaning it is not quite clear what defenses it may raise or what evidence will need to be

3    presented at trial.

4        As to the sixth factor—the plaintiff's interest in convenient and effective relief—

5    Blue Diamond Growers' convenience favors California; and this Court has the power to

6    render effective relief. This factor favors Blue Diamond Growers and California.

7        As to the seventh factor—the existence of an alternative forum—there exists an

8    alternative forum in Texas; and this factor therefore favors Defendant.

9        On balance, Defendant has not met the high burden of making a "compelling

10   case" of unreasonableness—and Blue Diamond Growers asks the Court to deny the

11   instant motion.

12   **C.    Should the Court Not Find That Plaintiff Blue Diamond Growers Has Already
         Made a Prima Facie Showing of Personal Jurisdiction, It Asks the Court to**
13       **Continue the Hearing on this Motion to Permit Further Discovery.**

14       Though Plaintiff Blue Diamond Growers asserts that it has already met its burden

15   to defeat the motion here, should the Court disagree, Blue Diamond Growers

16   respectfully asks for additional time to conduct further discovery. Based on the evidence

17   that has come out so far, Blue Diamond Growers projects seeking discovery on subjects

18   such as the following:

19      • the nature of the relationship and communications between Defendant and its
           licensees who operate the retail locations, including:
20
21          o what rights Defendant may have to obtain copies of documents or
               things from its licensees—given that Defendant's responses to
22              Requests for Documents refused to produce documents in the
               possession, custody, or control of these licensees[66];

23          o whether any of these licensees share any common ownership, officers,
               directors, or other governance with Texas Best Smokehouse;
24
25          o what legal or other rights Defendant has to control its licensees'
               purchase and sale of products under TEXAS BEST SMOKEHOUSE or
26              SMOKEHOUSE trademarks; and

27          o what knowledge or information is passed between Defendant and
               licensees;

28   _____
[66] *See* Weng Decl. Ex. 14 (as examples, see Responses to Requests Nos. 4, 13-23)

- 15 -

- the nature of any contacts that Defendant's licensees who operate the retail locations may have had with California, given the lack of clarity in Defendant's current responses to discovery, including

  o contracts or communications with vendors or suppliers in California[67];

  o contracts or communications with customers in California[68];

  o knowledge of Plaintiff Blue Diamond Growers or its products, particularly SMOKEHOUSE® products[69];

- what and when Defendant's licensees knew about Blue Diamond Growers and its SMOKEHOUSE® mark and products, given that Defendant's responses to discovery to date decline to provide any real information on this;

- what and when Defendant's licensees purchased or sold under the TEXAS BEST SMOKEHOUSE or SMOKEHOUSE marks, particularly almonds, other nuts, and almond- or nut-based products, given that Defendant's responses to discovery to date decline to provide any real information on this and in light of the more recently discovered "Christmas"-version of SMOKE HOUSE ALMONDS being offered for sale by one of the licensees; and

- whether and when Defendant and its licensees did learn or know of Blue Diamond Growers and its SMOKEHOUSE® mark and products, especially given some of its responses to discovery to date seeming to be unsupportable.[70]

**D.  Defendant Texas Best Smokehouse, Inc's Motion to Transfer Should Be Denied Because It Has Failed to Meet Its Burden of Showing a Clear Balance of Inconvenience.**

Though Section 1404(a) of Title 28 of the United States Code allows transfers for convenience, the plaintiff's choice of forum should not, or should rarely, be disturbed, unless the balance of convenience is strongly in favor of the defendant.[71] The defendant bears a heavy burden of showing a clear balance of inconvenience to it.[72] Moreover, "[t]ransfer will not be ordered if the result is merely to shift the inconvenience from one

---

[67] *See* Weng Decl. Ex. 14 (Responses to Requests No. 13-14 (stating that no such documents are in Defendant's possession, custody, or control—but not stating that no such documents exist, as it does with other responses (such as to Nos. 5-12)).
[68] *See* Weng Decl. Ex. 14 (Responses to Requests No. 15-17 (stating that no such documents are in Defendant's possession, custody, or control—but not stating that no such documents exist, as it does with other responses (such as to Nos. 5-12)).
[69] *See* Weng Decl. Ex. 14 (Responses to Requests No. 18-23 (stating that no such documents are in Defendant's possession, custody, or control—but not stating that no such documents exist, as it does with other responses (such as to Nos. 5-12)).
[70] *See* Weng Decl. Ex. 18, 14 (as examples, see Responses to Requests Nos. 20, 33, 39 and compare against information provided in enclosures with letter exhibit).
[71] *See E. & J. Gallo Winery v. F. & P. S.P.A.*, 899 F.Supp. 465, 466 (E. D. Cal. 1994).
[72] *Id.*

- 16 -

1664155.2

1   party to another."[73] Defendant has failed to meet these burdens. Among other things,

2   Defendant's bases for its motion consists entirely on vague generalizations of

3   inconvenience or misunderstanding of the applicable law.

4          Defendant must instead demonstrate specifically who the key witnesses are, to

5   the extent it relies upon them as a basis for its claimed inconvenience:

6          Rather than relying on vague generalizations of inconvenience, the moving party
       must demonstrate, through affidavits or declarations containing admissible
7          evidence, who the key witnesses will be and what their testimony will generally
       include.[74]

8   Defendant simply argues:

9
10         In the present case, it is clear that most, if not all, the third party witnesses whose
       testimony will be relevant are in Texas. [Citations omitted.] These include the
       licensees of TBS who use the accused name and mark and the relevant
11         purchasing public which BDG claims is likely to be confused by use of the TBS
       Name and Marks.[75]

12  The reference to "the relevant purchasing public" is too vague to support Defendant's

13  motion to transfer; and Defendant misunderstands the relevance of its own licensees. In

14  a case that Defendant cites, a federal court for the Eastern District of California did not

15  weigh distributors of the moving party seeking transfer like unaffiliated third parties:

16
17         Though they also maintain that there are over twenty (20) potential third-party
       potential witnesses located in [the desired transferee forum], Plaintiff fails to
       identify many of these witnesses, and it appears that all of them are affiliated with
18         Plaintiff as distributors of its products.[76]

19  Defendant has not provided enough specificity to support its motion to transfer.[77]

20         Overall, Defendant fails to show that venue in the Eastern District of California

21

22  [73] See Asociacion de Productores v California Avocado Comm., No. 2:08-cv-00439-
    GEB-DAD, 2008 U.S. Dist. LEXIS 40863 at *5 (E.D. Cal. May 20, 2008) (citing and
23  quoting Amini Innovation Corp. v. JS Imports, Inc., 497 F. Supp. 2d 1093, 1109-11 (C.D.
    Cal. 2007) (internal quotations marks omitted).
24  [74] Hope v Otis Elevator Co., et. al., 389 F. Supp. 2d 1235, 1243-44 (E.D. Cal. 2005)
    (quoting Cochran v NYP Holdings, Inc., 58 F. Supp. 2d 1113, 1119 (C.D. Cal. 1998))
    (internal quotation marks omitted).
25  [75] See Defendant's Motion at 8:20-:27.
    [76] See B&B Hardware, Inc. v. Hargis Indus., Inc., No. CV 06-4871 PA (SSx), 2006 U.S.
26  Dist. LEXIS 96381 at *15 (E. D. Cal. Nov. 29, 2006).
    [77] See Tolentino v. Mossman, 2007 U.S. Dist. LEXIS 95717 at *26 (E.D. Cal. Dec. 13,
27  2007) (denying Section 1404(a) motion because moving party "failed to state 'who the
    witnesses are, where they are located, what their testimony will be and why such
28  testimony is relevant or necessary.'")

- 17 -

1   imposes a clear imbalance of convenience. At this stage of the case, it is not yet clear

2   what issues will be raised or contested at trial—and Defendant has yet to provide Initial

3   Disclosures or to answer the Complaint. Nevertheless, Blue Diamond Growers is based

4   in Sacramento, California; it receives its almonds from approximately 3000 California

5   almond growers each year (with this crop valued annually at roughly $750 million). The

6   Complaint alleges a California state trademark registration and includes a California

7   state-law claim.[78] Blue Diamond Growers' SMOKEHOUSE® trademark at issue goes

8   back to the 1950s, and any records relating to it will all or mostly be located in

9   California.[79] Thus, California is a convenient venue for this case; and Defendant has not

10  met its burden of making a strong showing of inconvenience. Blue Diamond Growers

11  respectfully asks that the Court deny Defendant's motion to transfer.

12  **IV.   CONCLUSION**

13          Defendant Texas Best Smokehouse, Inc. admits it received specific actual notice

14  of Plaintiff Blue Diamond Growers' registered trademark rights in SMOKEHOUSE® and

15  associated claims—including notice that Blue Diamond Growers was located in

16  California—on or about December 13, 2007. In the 11-12 months since then, Defendant

17  has continued and expanded its infringing and diluting use of the mark TEXAS BEST

18  SMOKEHOUSE and the standalone mark SMOKEHOUSE ALMONDS in connection

19  with almonds and other nuts. In July 2008 and again in September 2008, Defendant

20  even told Blue Diamond Growers, in communications directed to California, that the

21  SMOKEHOUSE ALMONDS product had been removed from the Texas Best

22  Smokehouse retail locations. But this was false and misleading—likely intended to lull

23  Blue Diamond Growers into inattention or inaction. These acts in aggregate are sufficient

24  to assert specific jurisdiction over Defendant in California.

25          Blue Diamond Growers respectfully asks this Court to deny all aspects of

26  Defendant's instant motion.

27  _____

28  [78] Complaint ¶¶ 9, 34-36.
    [79] O'Shaughnessy Decl. ¶ 15.

- 18 -

MPA'S ISO PLTF'S OPPOSITION TO DEFT'S MOTION TO DISMISS FOR
LACK OF PERSONAL JURISDICTION (CV08-01529 GEB GGH)

1664155.2

1

2      DATED:  December 1, 2008                    HANSON BRIDGETT LLP

3

4                                          By:    /s/ Garner K. Weng
                                                  GARNER K. WENG
5                                                 Attorneys for Plaintiff
                                                  BLUE DIAMOND GROWERS, a California
6                                                 corporation

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 19 -